IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION COURT

CASE NO.:

CHURCHILL DEVELOPMENT GROUP, LLC,
a Florida limited liability company and
MICHAEL S. MURRAY, individually

       Plaintiffs,

vs.

THE VUE – ORLANDO, LLC, a Delaware Limited
Liability Company; ORLANDO VUE LIMITED
PARTNERSHIP, an Illinois corporation, PC HOME
INVESTORS, INC., an Illinois corporation; LIBERTY
PLACE – ORLANDO, LLC, an Illinois limited liability
company; WESTMINSTER PARTNERS II, LLC,
an Illinois limited liability company; BAYSHORE
TITLE, INC., a Florida corporation;, KEYBANK
NATIONAL ASSOCIATION, a national banking
association; KEY REAL ESTATE EQUITY CAPITAL,
INC., an Ohio corporation; KEYBANK REAL ESTATE
CAPITAL, KEY PRIVATE EQUITY GROUP, an Ohio
corporation; RESIDENTIAL PRIVATE EQUITY
GROUP, KEY GLOBAL CAPITAL, an Ohio corporation;
KEY PRIVATE EQUITY GROUP, a California corporation;
KREF RESIDENTIAL MEZZANINE FUND I, LLC,
a Delaware limited liability company, as assignee of Key Real
Estate Equity Capital, Inc., SWANSON DEVELOPMENT
CORPORATION, SWANSON – ORLANDO, LLC;
SHAYLE EPSTEIN, individually; ERIK MOSKOWITZ,
individually, RICHARD W. NORRIS, P.A.,
RICHARD W. NORRIS, Esquire, individually,

       Defendants.

_____/

## COMPLAINT

Plaintiffs, Churchill Development Group, LLC, ("Churchill") and Michael S. Murray ("Murray") by and through their undersigned counsel, sue the above referenced defendants and assert as follows:

## THE PARTIES

1.      Plaintiff Churchill is a Florida limited liability company with its principal place of business in Orlando, Florida.

2.      Plaintiff Murray is a Florida resident who resides in Orlando, Orange County, Florida.

3.      Defendant The Vue-Orlando, LLC (the "Vue-Orlando") is a Delaware limited liability company whose principal place of business is in Lake Forest, Illinois, with an office located in Orlando, Orange County, Florida.

4.      Defendant Orlando Vue Limited Partnership ("Orlando Vue LP") is an Illinois limted partnership designated as the PC Member of The View – Orlando, LLC, and exercised control and direction concerning the actions and decisions of the Vue-Orlando, including but not limited to decisions with regard to Churchill and Murray.

5.      Defendant Liberty Place-Orlando, LLC ("Liberty Place") is an Illinois limited liability company whose principal place of business is in Lake Forest, Illinois. Liberty Place is the managing member of the Vue-Orlando and is engaged in conducting business in Orlando, Orange County, Florida.

6.      Defendant Westminster Partners II, LLC ("Westminster") is an Illinois limited liability company whose principal place of business is in Lake Forest, Illinois and is engaged in business in Orlando, Orange County, Florida. It is the sole Member of Westminster Orlando,

LLC, which makes up the Managing Member of The Vue-Orlando, LLC, along with Swanson Orlando, LLC, and Churchill.

7.     Defendant PC Home Investors, Inc. ("PC Home") is an Illinois corporation whose principal place of business is in Hinsdale, Illinois and is engaged in regular and continuous business in Orlando, Orange County Florida.  PC Home is a Member of The Vue-Orlando and exercises direct control over the management and actions of the Vue-Orlando, including but not limited to decisions with regard to Churchill and Murray.

8.     Defendant Bayshore Title, Inc. ("Bayshore Title") is a Florida corporation whose principal place of business is in Miami, Florida.  Bayshore Title maintains offices and conducts business in Orlando, Orange County, Florida.  Bayshore Title has acted and continues to act as closing, title and escrow agent for condominium units and commercial property sold at the Vue-Orlando, including preparation of all documents necessary to effectuate the closings.  This work, including all legal work for the closings, on behalf of the Vue-Orlando, is performed by its agent and representative, Richard W. Norris, Esquire.

9.     Defendant Keybank National Association, ("Keybank, N.A.") is a national banking association that conducts business in Orlando, Orange County, Florida.  It acted as a Mezzanine Lender pursuant to an Intercreditor Agreement, attached to the Complaint as Exhibit A as secured by a Promissory Note attached as Exhibit B.   Keybank, N.A. exercised control over the project in accordance with the terms and conditions of the Intercreditor Agreement.

10.     Key Real Estate Equity Capital, Inc., an Ohio corporation, ("Key Real Estate Equity") was a Senior and Mezzanine Lender to the Vue-Orlando.  The Senior loan agreement was effective September 26, 2005 and is attached as Exhibit C.  Pursuant to said senior loan agreement, Key Real Estate Equity had the right to approve decisions relating to the project,

including the contracts between the Vue-Orlando, its owners and Churchill Development, and decisions concerning "Cost Overruns" on the development of the project including any recapitalization decisions, and did exercise said rights of approval.

11. Kref Residential Mezzanine Fund I, LLC, a Delaware limited liability company, was assignee of Key Real Estate Equity Capital, Inc., of the Promissory Note securing the above referenced Mezzanine loan, including all rights, duties and obligations of said Note.

12. Swanson Development Corporation ("Swanson Development"), is the sole member of Swanson Orlando, LLC, which makes up the Managing Member of The Vue - Orlando, LLC, along with Westminster Orlando, LLC and Churchill.

13. Swanson – Orlando, LLC ("Swanson-Orlando), makes up the Managing Member of The Vue – Orlando, LLC, along with Westminster Orlando, LLC and Churchill.

14. Defendant Shayle Epstein ("Epstein", individually, is a consultant to PC Homes and The Vue-Orlando and has engaged in business with regard to the Vue-Orlando, including providing advice and direction with regard to the sales and marketing of the Vue – Orlando condominiums, contractual agreements, recapitalization, including but not limited to breaching of contractual agreements and advising and directing the acts that have given rise to the instant lawsuit.

15. Upon information and belief, Defendant Erik Moskowitz ("Moskowitz") is an Illinois resident residing in or around Chicago, Illinois and is engaged in business in Orlando, Orange County, Florida directing, managing and controlling the actions of the Vue-Orlando, Liberty Place – Orlando, and Westminster, as well as actions being taken for his own personal gain.

## GENERAL ALLEGATIONS

16.     This action generally concerns Defendants' breach of contractual agreements, related business torts, and Plaintiffs' requests for an accounting and other equitable relief with respect to their interests in the VUE at Lake Eola, a 375 residential unit condominium development in downtown Orlando, Florida (the "VUE").

17.     Jurisdiction and venue are proper in this Court pursuant to *e.g.* Florida Statutes Section 47.011, the parties' forum selection clause and agreement to have all disputes litigated in Orange County, Florida, and because the real property at issue and related causes of action asserted herein are located in and arose in Orange County, Florida.

18.     Plaintiff Churchill is engaged in the business of, *inter alia*, commercial property development, sales and marketing.   Plaintiff Murray is the sole Member of the Plaintiff Churchill, a limited liability company.

19.     Defendant Vue-Orlando is a single purpose limited liability company that was designed to own and operate the VUE.   A true and accurate copy of the Vue-Orlando operating agreement is attached hereto as Exhibit D.

20.     Defendant Liberty Place is the managing member of Defendant Vue-Orlando. The members of Defendant Liberty Place are Defendant Westminster (49% owner), Plaintiff Churchill (30% owner), and Swanson-Orlando, LLC (21% owner).   A true and accurate copy of the Liberty Place operating agreement, as amended, is attached hereto as Exhibit E.

21.     Pursuant to the operating agreement, Plaintiff Murray is a Principal/"Sponsor" of the Vue-Orlando.

22.     Defendant Moskowitz is a 51% owner of Defendant Westminster.

23.     From 2003 through the present, Plaintiff Churchill rendered development, sales and marketing services with respect to the VUE, and has retained a licensed Florida real estate broker to effectuate closings for units at the VUE.

24.     Since approximately 2003, Plaintiffs Churchill and Murray and their affiliates have entered into various agreements with Defendants Vue-Orlando, Liberty Place, Westminster, Moskowitz (collectively, the "Vue-Orlando Defendants") and their affiliates with respect to the VUE and other residential condominium developments. The parties' general business plan is set forth in a *Global Development and Profit Sharing Agreement* dated September 22, 2003, as amended, a true and accurate copy of which is attached hereto as Exhibit F.

25.     With respect to the development of the VUE, Plaintiff Churchill and the Vue-Orlando Defendants executed the following:

- *Development Services Agreement* (between Plaintiff Churchill Development and Defendant Liberty Place) dated March 26, 2004 (Exhibit G hereto);

- *Real Estate Sales and Marketing Services Agreement* (between Plaintiff Churchill Development and Defendant Liberty Place) dated March 26, 2004 (Exhibit H hereto);

- *Distribution of Excess Fees from Development Services Agreement and Real Estate Sales and Marketing Agreement* (Letter Agreement) dated March 26, 2004 (Exhibit I hereto);

- *Development Services Agreement* (between Plaintiff Churchill Development and Defendant Liberty Place) dated June 30, 2004 (Exhibit J hereto);

- *Real Estate Sales and Marketing Services Agreement* (between Plaintiff Churchill Development and Defendant Liberty Place) dated June 30, 2004 (Exhibit K hereto);

- Addendum to June 30, 2004 *Development Services Agreement* (between Plaintiff Churchill Development and Defendant Liberty Place) (Exhibit L hereto);

The foregoing agreements are collectively referred to herein as the "Prior Agreements".

26. The Prior Agreements established a development and sales plan for the VUE whereby Plaintiff Churchill (i) was responsible for marketing, developing and handling all contract administration for the VUE; and (ii) would receive commission payments from Liberty Place in the amount of 3.9% of the selling price for each unit sold.

27. In addition, Amendment I to the Global Development and Profit Sharing Agreement gave Plaintiff Murray the right to purchase up to 22 units in the VUE at pre-construction prices. (Exhibit F). Since two of the units have been redesigned and are being sold as a single unit, the subject units are referred to herein as the "21 Units". A spreadsheet identifying the 21 Units is attached hereto as Exhibit M.

28. In April 2007, a *Memorandum of Agreement* was executed by *e.g.* Plaintiff Churchill and its affiliates and Defendants Liberty Place and Westminster. The Memorandum of Agreement ratified the Prior Agreements as they pertain to the VUE. A true and accurate copy of the Memorandum of Agreement is attached hereto as Exhibit N.

29. From 2005 through 2007, Plaintiff Churchill expended substantial time, effort and resources to develop the VUE, locate purchasers for units at the VUE, secure numerous deposits for units at the VUE, and coordinate closings for units at the VUE.

30. On December 28, 2007, the Vue-Orlando Defendants sent a letter to Plaintiff Churchill which sought to terminate the Development Services Agreement and Plaintiff Churchill's development work on the VUE. A true and accurate copy of this letter is attached hereto as Exhibit O.

31.     On December 29, 2007, the Vue-Orlando Defendants sent a second letter to Plaintiff Churchill which sought to terminate the Real Estate Sales and Marketing Agreement and Plaintiff Churchill's sales work on the VUE.  A true and accurate copy of this letter is attached hereto as Exhibit P.

32.     The Vue-Orlando Defendants' attempt to terminate the Real Estate Sales and Marketing Agreement was based on a sham allegation that Plaintiff Churchill defaulted by failing to reimburse Defendant Vue-Orlando for outside brokerage fees.  All brokerage fees are and were paid out of escrow upon closing.

33.     In early January 2008, Plaintiffs Churchill and Murray contested the termination letters by the Vue-Orlando Defendants and attempted to devise a strategy to resolve their dispute. The Vue-Orlando Defendants and Plaintiffs engaged the law firm of Alvarez, Sambol, Winthrop & Madson, P.A. (the "Alvarez Firm") to act as the escrow agent with respect to certain contested deposits and commissions for the VUE closings.

34.     Thereafter, on or about January 7, 2008, Plaintiff Churchill Development and Defendant Vue-Orlando executed a Letter Agreement confirming certain escrow terms and distributions related to the VUE closings.  A true and accurate copy of this Letter Agreement is attached hereto as Exhibit Q.

35.     On January 14, 2008, the Vue-Orlando Defendants sent a letter to Plaintiff Murray confirming his right to assign the 21 Units at the VUE and agreeing to other items with respect to those Units (the "Assignment Agreement"), including cooperation with regard to the sale and marketing of those units.  A true and accurate copy of Assignment Agreement is attached hereto as Exhibit R.

36.     On or about January 14, 2008, Plaintiff Churchill and Defendant Liberty Place executed an Escrow Agreement with the Alvarez Firm in which the Alvarez Firm would hold in escrow the real estate commissions payable to Plaintiff Churchill, pending resolution of Plaintiff Churchill's dispute with Defendant Liberty Place.   A true and accurate copy of this Escrow Agreement is attached hereto as Exhibit S.

37.     On or about January 29, 2008, attorney Richard Norris, on behalf of the Vue-Orlando Defendants, without prior notice, removed all of the VUE closing files from the Alvarez Firm.   This action was taken without reasonable prior notice to the Plaintiffs or to the Alvarez Firm and without justification or basis other than to further the improper and tortious actions of the defendants.

38.     Upon information and belief, despite sales and commissions generated by Plaintiff Churchill, and the ongoing unit sales at the VUE, funds from those transactions have not been deposited with the Alvarez Firm and the commissions owed to Plaintiffs under the prior agreements have not been paid, nor deposited in escrow.

39.     Upon information and belief, the Vue-Orlando Defendants have actively engaged in a scheme to 1) avoid paying commissions to Plaintiff Churchill for closings at the VUE, 2) prevent Michael Murray from assigning or selling his units, 3) withhold and or convert funds being held as deposits for those units, and 4) attempt to induce unit purchasers to cancel purchase agreements brokered through Plaintiff Churchill and re-sign agreements directly with the Vue-Orlando Defendants.

40.     Upon information and belief, the Vue-Orlando Defendants are further attempting to sell Plaintiff Murray's 21 Units, notwithstanding, and in disregard of the executed purchase agreements (the "Purchase Agreements") for same.   Due to their volume, a true and accurate

copy of one of the 21 Purchase Agreements is attached hereto as Exhibit T, while all others are retained by Plaintiff Murray. Upon information and belief, the Vue-Orlando is in possession of true and accurate copies of said agreements.

41.     The Vue-Orlando Defendants have unreasonably refused to allow Plaintiff Murray or his representatives, including third party real estate brokers, from showing his condominium units, in an effort to prevent him from selling or assigning those units. Yet, the defendants continue to show other units and have permitted other owners, including Defendant Moskowitz, to assign their contracts to purchase condominium units.

42.     The Vue-Orlando Defendants and Defendants Bayshore Title, Richard W. Norris P.A. and Richard W. Norris have failed to provide the Plaintiffs with any financial information regarding sales, closings, profits, losses, or any accounting information, notwithstanding Plaintiffs' contractual rights under the aforementioned Agreements and ownership interest in the project and prior written demand for said information. The Vue-Orlando Defendants have physically locked the Plaintiffs out of the VUE property, have prevented Plaintiff Churchill's former sales employees from communicating with Plaintiffs and have threatened to have Plaintiff Murray arrested for trespass if he enters the VUE property.

43.     Defendant Moskowitz agreed to fund ½ (one half) of the amount of the deposits for closing on the 21 Units, the total of which was to be Four Hundred and Seven Thousand Dollars ($407,000.00). These funds were to be taken out of each draw payment payable to Plaintiff Churchill under the previously referenced Development Agreement. Seventy-Five Hundred ($7,500.00) was deducted from each development fee draw payment, for a total monthly deduction of Fifteen Thousand Dollars ($15,000.00). Defendant Moskowitz deducted and withheld a total of $202,500.00 (the "Deposit Funds"). However, the Defendants have thus

far failed to fund the other half of the deposit, notwithstanding the deduction of those funds. In addition, the Vue Defendants have failed to apply the referenced $202,500.00 to the deposits for closing on the condominium units. However, upon information and belief, only half of the total amount of the deductions was shown to be held in escrow for the 21 unit closings.

44.     Upon information and belief, Defendant Moskowitz has improperly withheld and misdirected the other half of the Deposit Funds and has converted those funds to his own personal or business use.

45.     Defendants Keybank, N.A., Key Real Estate Equity Capital, Inc., Keybank Real Estate Capital, Key Private Equity Group, Residential Private Equity Group, Key Global Capital, and KREF Residential Mezzanine Fund I, LLC (collectively, the "Lending Defendants") have exercised excessive control in operations of the VUE by approving, authorizing, and otherwise directing the VUE-Orlando Defendants to take the above actions with regard to Plaintiffs' contractual and equitable rights.

46.     Defendants PC Home, the Lending Defendants, and Defendants Epstein and Moskowitz have individually and in concert engaged in a scheme to deprive Plaintiffs of development funds, commissions from sales, and a recapitalization plan that excludes Churchill and Murray from the VUE project.

47.     All conditions precedent to this action have occurred or have been waived.

48.     Plaintiffs have retained Fowler White Boggs Banker, P.A. to represent them in this action, and have agreed to pay these attorneys their reasonable fees for the services rendered and costs incurred. Plaintiffs are entitled to recover their costs and reasonable attorney's fees from the Defendants as provided in the respective agreements.

## COUNT I
## Declaratory Judgment - Fla. Stat. § 86.011 et seq.

49.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

50.     This is an action for Declaratory Judgment pursuant to Chapter 86, Florida Statutes with respect to Plaintiff Churchill's rights under the Prior Agreements.

51.     The Vue-Orlando Defendants' actions with respect to Plaintiff Churchill's commissions, compensation, rights and interests under the Prior Agreements have created an actual, ripe and justiciable controversy that, if not resolved, would affect Plaintiffs Churchill's right, title, and interest in the VUE.

52.     The Vue-Orlando Defendants are bound by the Prior Agreements, and are barred, estopped, and enjoined from taking any action that may impair or otherwise prohibit Plaintiff Churchill from exercising its rights and obtaining all monies due with respect to the VUE.

53.     Plaintiffs have joined all parties with an interest in the outcome of this action for purposes of this Court's declaration of rights. If discovery reveals additional interested parties, Plaintiff will seek permission to add said parties.

54.     All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

55.     Plaintiffs are uncertain of their rights and obligations under the above-referenced Prior Agreements and are in need of and entitled to a declaration of their rights and obligations under the terms said Prior Agreements.

56.     Due to Plaintiffs' uncertainty as to their rights and obligations under said Prior Agreements, they are in need of judicial interpretation or construction of the aforementioned Agreements, as they relate to the current circumstances, claims and potential claims of the

parties, including Defendants' efforts to sell said condominium units to third persons that are not parties to the subject agreements.

57. Plaintiffs seek declaratory relief in that:

(a). There is a bona fide, actual, present and practical need for the declaration;

(b) There is a present, ascertainable state of facts upon which relief can be granted;

(c) The rights and obligations of the Plaintiff, under the terms and conditions of the Prior Agreements can be determined on said state of facts and the law applicable to the facts;

(d) The above-referenced Defendants have present and adverse interests in the subject mater of this claim;

(e) The adverse interests of the Defendants are now before this court.

58. Plaintiff Churchill is entitled to a declaration from this Court as follows:

a. Plaintiff Churchill has a valid and enforceable right to immediately collect all commissions due and owing pursuant to its sales of units at the VUE;

b. The Vue-Orlando Defendants are bound by and must comply with the Prior Agreements and all other agreements by and between the Vue-Orlando Defendants and Plaintiff Churchill, and are precluded from taking any action in contravention of said agreements;

WHEREFORE, Plaintiffs respectfully request this Court issue a judgment declaring as follows:

(a)     that the Prior Agreements are valid and enforceable in accordance with their terms;

(b)     that Plaintiffs' efforts to cancel said agreements are without factual support or legal basis;

(c)     that Plaintiff Churchill is entitled to all commissions earned for units which it sold and closed at the VUE;

(d)     that Plaintiff Churchill is entitled to the commission amount specified in the Prior Agreements, with regard to all future closings of condominiums at the VUE;

(e)     that Plaintiffs and their agents, representatives and employees have full access and the right to inspect and show the condominium units for the purpose of purchase, sale, or rental of the units or assignment of the purchase agreements;

(f)     that the Vue-Orlando Defendants is bound by the Prior Agreements and all other agreements with Plaintiffs;

(g)     that Plaintiffs be granted such additional relief as the Court deems appropriate under the circumstances;

(h)     that this court's jurisdiction be reserved in this matter to determine further equities between the parties as they exist or may arise by reason of any declaration of rights made herein; and

(i)     that Plaintiffs are entitled to an award of attorneys' fees and costs in connection with preparing and bringing this action, and for such further relief as this Court deems just and proper.

## COUNT II
## Declaratory Judgment - Fla. Stat. § 86.011 et seq.

59.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

60.     This is an action for Declaratory Judgment pursuant to Chapter 86, Florida Statutes with respect to Plaintiff Churchill's rights under the Escrow Agreement.

61.     The Vue-Orlando Defendants' actions with respect to escrowed commissions owed to Plaintiff Churchill have created an actual, ripe and justiciable controversy that, if not resolved, would affect Plaintiffs Churchill' right, title, and interest in the VUE.

62.     The Vue-Orlando Defendants' actions with respect to Plaintiff Churchill's right to the escrowed commissions have created an actual, ripe and justiciable controversy that, if not resolved, would affect Plaintiffs Churchill's right, title, and interest in the VUE.

63.     The Vue-Orlando Defendants are bound by the Escrow Agreement and all other agreements and are barred, estopped, and enjoined from taking any action that may impair or otherwise prohibit Plaintiff Churchill from exercising its rights and obtaining all monies due with respect to the VUE.

64.     All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

65.     Plaintiffs have joined all parties with an interest in the outcome of this action for purposes of this Court's declaration of rights.  If discovery reveals additional interested parties, Plaintiff will seek permission to add said parties.

66.     Plaintiffs are uncertain of their rights and obligations under the above-referenced Escrow Agreement and are in need of and entitled to a declaration of their rights and obligations under the terms said Agreement.

67. Due to Plaintiffs' uncertainty as to their rights and obligations under the Escrow Agreement, they are in need of judicial interpretation or construction of the aforementioned Agreement, as it relates to the current circumstances, claims and potential claims of the parties, including Defendants' failure to pay the escrowed funds or credit said funds to the condominium Purchase Agreements and related Promissory Note, and Defendants' efforts to sell said condominium units to third persons that are not parties to the subject agreements.

68. Plaintiffs seek declaratory relief in that:

(a). There is a bona fide, actual, present and practical need for the declaration;

(b) There is a present, ascertainable state of facts upon which relief can be granted;

(c) The rights and obligations of the Plaintiff, under the terms and conditions of the Escrow Agreement can be determined on said state of facts and the law applicable to the facts;

(d) The above-referenced Defendants have present and adverse interests in the subject mater of this claim;

(e) The adverse interests of the Defendants are now before this court.

69. Plaintiff Churchill is entitled to a declaration from this Court as follows:

a. that Plaintiffs have a valid and enforceable right to immediately collect all commissions due and owing pursuant to its sales of units at the VUE;

b. that the Vue-Orlando Defendants are bound by and must comply with the Escrow Agreement and all other agreements by and between the Vue-Orlando Defendants and Plaintiff Churchill, and are obligated to pay Plaintiffs' commissions for

the sale of condominium units that have and will occur and are precluded from taking any action in contravention of said agreements;

c.    that Plaintiffs and their agents, representatives and employees have full access and the right to inspect and show the condominium units for the purpose of purchase, sale, or rental of the units or assignment of the purchase agreements;

WHEREFORE, Plaintiff Churchill prays for judgment as follows:

(a)    Declaring Plaintiff Churchill to be entitled to all commissions earned for units which it sold and closed at the VUE;

(b)    Declaring the Vue-Orlando Defendants to be bound by the Escrow Agreement and all other agreements;

(c)    that Plaintiffs be granted such additional relief as the Court deems appropriate under the circumstances;

(d)    that this court's jurisdiction be reserved in this matter to determine further equities between the parties as they exist or may arise by reason of any declaration or rights made herein; and

(e)    Declaring Plaintiff's entitlement to an award of attorneys' fees and costs in connection with preparing and bringing this action, and for such further relief as this Court deems just and proper.

## COUNT III
### Declaratory Judgment - Fla. Stat. § 86.011 et seq.

70.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

71.    This is an action for Declaratory Judgment pursuant to Chapter 86, Florida Statutes with respect to Plaintiff Murray's rights to the 21 Units.

72. The Vue-Orlando Defendants' actions with respect to Plaintiff Murray's interests in the 21 Units have created an actual, ripe and justiciable controversy that, if not resolved, would affect Plaintiffs Murray' right, title, and interest in the 21 Units at the VUE.

73. The Vue-Orlando Defendants are bound by the Purchase Agreements, Assignment Agreement and all other agreements and are barred, estopped, and enjoined from taking any action that may impair or otherwise prohibit Plaintiff Murray from exercising his rights with respect to the 21 Units at the VUE.

74. Plaintiffs have joined all parties with an interest in the outcome of this action for purposes of this Court's declaration of rights. If discovery reveals additional interested parties, Plaintiff will seek permission to add said parties.

75. All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

76. Plaintiffs are uncertain of their rights and obligations under the above-referenced Escrow Agreement and are in need of and entitled to a declaration of their rights and obligations under the terms of said Agreement.

77. Due to Plaintiffs' uncertainty as to their rights and obligations under the Purchase and Assignment Agreements, they are in need of judicial interpretation or construction of the aforementioned Agreements, as they relate to the current circumstances, claims and potential claims of the parties, including Defendants' failure to pay the escrowed funds or credit said funds to the condominium Purchase Agreements and related Promissory Note, Defendants' lock-out of Plaintiffs and their representatives, withholding of escrowed funds and efforts to sell said condominium units to third persons that are not parties to the subject agreements.

78. Plaintiff Murray is entitled to a declaration from this Court as follows:

a. Plaintiff Murray has a valid and enforceable right to acquire and assign his rights in the 21 Units to replacement purchasers;

b. The Vue-Orlando Defendants are bound by and must comply with the Purchase Agreements, Assignment Agreement, and all other agreements by and between the Vue-Orlando Defendants and Plaintiffs, and are precluded from taking any action in contravention of said agreements;

79. Plaintiffs seek declaratory relief in that:

(a). There is a bona fide, actual, present and practical need for the declaration;

(b) There is a present, ascertainable state of facts upon which relief can be granted;

(c) The rights and obligations of the Plaintiff, under the terms and conditions of the Purchase and Assignment Agreements can be determined on said state of facts and the law applicable to the facts;

(d) The above-referenced Defendants have present and adverse interests in the subject mater of this claim;

WHEREFORE, Plaintiffs pray for judgment as follows:

(a) Declaring Plaintiff Churchill to be entitled to all commissions earned for units sold and closed at the VUE;

(b) Declaring Plaintiff Murray to be entitled to immediately inspect all records pertaining to the 21 Units;

(c) Declaring the Vue-Orlando Defendants to be bound by the Prior Agreements, Escrow Agreement, Assignment Agreement and all other agreements;

(d)    Declaring that Plaintiffs be permitted to assign the condominium Purchase Agreements;

(e)    Declaring that Plaintiffs and their agents, representatives and employees have full access and the right to inspect and show the condominium units for the purpose of purchase, sale, or rental of the units or assignment of the Purchase Agreements;

(f)    That Plaintiffs be granted such additional relief as the Court deems appropriate under the circumstances;

(g)    That this court's jurisdiction be reserved in this matter to determine further equities between the parties as they exist or may arise by reason of any declaration or rights made herein; and

(h)    For an award of Plaintiffs' attorney' s fees, costs in connection with preparing and bringing this action, and for such further relief as this Court deems just and proper.

## COUNT IV
### Action for an Accounting

80.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

81.    This is an action for an accounting and damages.

82.    During the period of Plaintiff Churchill's development of the VUE, Plaintiff Churchill sold units and generated commissions to which Plaintiff Churchill is entitled.

83.    Under the terms of the Prior Agreements, Escrow Agreement, Assignment Agreement, Operating Agreement of the Vue – Orlando, LLC and Operating Agreement of Liberty Place – Orlando, LLC, Plaintiffs are entitled to an accounting with regard to the sales records, sales contracts, escrow accounts, and operating, financial and all business records of the

Vue – Orlando, LLC and Liberty Place – Orlando, LLC, including the status of all loans and payments to lenders with regard to the Orlando Vue project.

84.     The Defendants have intentionally withheld and interfered with Plaintiff Churchill's right to access the above referenced financial and operating documents and right to collect commissions and have and continue to prevent Plaintiff Churchill from examining records pertaining to the purchase contracts, escrowed funds and payments.

85.     To date, the Vue-Orlando Defendants have failed to render an accounting for the monies due and owing to Plaintiff Churchill.

86.     An accounting will reveal and demonstrate the actual amounts due and owing to Plaintiffs under the terms of the above referenced Agreements, the amount of which cannot be ascertained by Plaintiff Churchill absent a review of the Defendants' records pertaining to the VUE.

87.     Plaintiff Churchill has no adequate remedy at law.

WHEREFORE, Plaintiff demands an accounting of all financial and operating records and documents, including but not limited to all documents relevant to the sums due and owing to Plaintiffs for sales commissions and development fees arising out of the Prior Agreements and Escrow Agreement, from Defendants Vue-Orlando, Liberty Place, Westminster, PC Home, Swanson – Orlando, LLC, Keybank, N.A, Key Real Estate Equity, Bayshore Title, Richard W. Norris, Esquire and Moskowitz, and demands judgment against these Defendants for any sums found to be due from Defendants to Plaintiff Churchill; for an award of prejudgment interest and attorneys fees and costs; and such further relief as this Court deems proper.

## COUNT V
## Breach of Real Estate Sales and Marketing Agreements

88.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

89.    Plaintiff Churchill entered into the Real Estate Sales and Marketing Services Agreement on or about June 30, 2004. (Exhibit K).

90.    Pursuant to the Real Estate Sales and Marketing Agreement, Defendant Liberty Place engaged Plaintiff Churchill Development to perform project marketing and unit sales for the VUE. The terms of the Agreement were performed by Churchill and the Agreement was ratified by Defendants Liberty Place and Moskowitz.

91.    Pursuant to the Agreement, Defendant Liberty Place agreed to compensate Plaintiff Churchill in the amount of 3.9% of the selling price of each unit.

92.    The Real Estate Sales and Marketing Services Agreement, by its own terms, is non-cancelable except in the event of fraud or a default by either party.

93.    In April 2007, Defendant Liberty Place executed a Memorandum of Agreement which, *e.g.* again ratified its obligations to Plaintiff Churchill Development under the Real Estate and Marketing Services Agreement in a. (Exhibit N).

94.    On or about December 29, 2007, Defendant Liberty Place attempted to improperly terminate the Real Estate and Marketing Services Agreement. A copy of the letter dated December 29, 2007 is attached as Exhibit P).

95.    Defendant Liberty Place has breached the terms of the Real Estate and Marketing Services Agreement for reasons including but not limited to its failure to pay all commissions to Plaintiff Churchill due and owing thereunder, locking Plaintiffs out of the property and sales office and prohibiting communication with the sales force. Upon information and belief,

Defendants have also attempted to sell units utilizing another broker as well as direct sales and marketing efforts and failing to provide documents and records with regard to the marketing and sales of condominium units and commercial space.

96. Defendants have breached their general and implied duty of good faith and fair dealing with regard to their contractual obligations.

97. All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

98. As a result of the Defendant Liberty Place's breach, Plaintiff Churchill has suffered direct and proximate damages under the Real Estate Sales and Marketing Services Agreement in a principal amount to be determined at trial and after an accounting by the Defendants, plus interest at the statutory rate, attorney's fees and costs.

WHEREFORE Plaintiff Churchill demands judgment against Defendant Liberty Place for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT VI
## Breach of Development Services Agreement

99. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

100. Plaintiff Churchill Development executed the Development Services Agreement on June 30, 2004. (Exhibit J).

101. Pursuant to the Development Services Agreement, Plaintiff Churchill rendered development services for the VUE on behalf of Defendant Liberty Place. In exchange, Defendant Liberty Place was obligated to pay Plaintiff Churchill 80% of development and overhead fees for the VUE.

102.     All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

103.     Defendant Liberty Place has breached the Development Services Agreement by *e.g.* failing to render all payments due to Plaintiff Churchill under said Agreement.

104.     Defendants have breached their general and implied duty of good faith and fair dealing with regard to their contractual obligations.

105.     All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

106.     As a result of the Defendant Liberty Place's breach, Plaintiff Churchill has suffered direct and proximate damages under the Development Services Agreement in a principal amount in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, costs and attorneys' fees, the full amount to be determined at trial and after an accounting by the Vue –Orlando Defendants, plus interest at the statutory rate, attorney's fees and costs.

WHEREFORE Plaintiff Churchill demands judgment against Defendant Liberty Place for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT VII
### Breach of Escrow Agreement

107.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

108.     Pursuant to the January 7, 2008 letter (Exhibit Q) and the Escrow Agreement (Exhibit S) among Plaintiff Churchill, Defendant Liberty Place, and the Alvarez Firm, Defendant Liberty Place was obligated to deposit all commissions due and owing to Plaintiff Churchill with the Alvarez Firm to be held in escrow pending the resolution of this dispute.

109. Upon information and belief, the Vue-Orlando Defendants intentionally caused closing files to be removed from the Alvarez Firm in an effort to conceal those files and avoid making commission payments due and owing to Plaintiff Churchill.

110. Defendants have failed to provide a requested accounting of the escrow account, funds, payments and disbursements. Absent an accounting by the Vue-Orlando Defendants, Plaintiff Churchill cannot accurately ascertain its damages suffered as a proximate result of Defendant Liberty Place's breach of the Escrow Agreement.

111. Defendants have breached their general and implied duty of good faith and fair dealing with regard to their contractual obligations.

112. All conditions precedent to the initiation and maintenance of this claim have been complied with, have occurred, or have been waived.

113. As a result of Defendant Liberty Place's breach of the Escrow Agreement, Plaintiff Churchill has suffered direct and proximate damages under the Real Estate Sales and Marketing Services Agreement in the principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiff Churchill demands judgment against Defendant Liberty Place for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT VIII
### Breach of Assignment Agreement

114. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

115. Pursuant to the January 14, 2008 Assignment Agreement by Defendants Vue-Orlando, Liberty Place, Westminster and Moskowitz, Defendants agreed that Plaintiff Murray could assign his contracts for the 21 Units at the VUE to replacement purchasers. (Exhibit R).

116. Defendants Vue-Orlando, Liberty Place, Westminster and Moskowitz have breached the terms of the January 14, 2008 Assignment Agreement by *e.g.,* interfering with Plaintiff Murray's rights in the 21 Units, refusing Plaintiffs, their agents, representatives and employees access to the property, precluding brokers from showing the condominiums on Plaintiff's behalf, threatening to have Plaintiff Murray arrested if he enters the property, refusing to provide any financial information or documents regarding the project, and precluding Plaintiff Murray from assigning the contracts to replacement purchasers, withholding escrowed funds that were specifically intended for payment of the Promissory Note for the Purchase Agreements and otherwise interfering with Plaintiffs' rights under the Assignment and other Agreements.

117. Defendants have breached their general and implied duty of good faith and fair dealing with regard to their contractual obligations.

118. As a direct and proximate result of the Vue-Orlando Defendants' breach, Plaintiff Murray has suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiff Murray demands judgment against Defendants Vue-Orlando, Liberty Place, Westminster and Moskowitz for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT IX
## Specific Performance

119. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

120. This is an action for specific performance of the 21 Purchase Agreements to convey real property in Orange County, Orlando Florida.

121. In 2005, Plaintiff Murray and Defendants Vue-Orlando and Liberty Place executed the written Purchase Agreements for the 21 condominium units at the VUE. Due to their volume, a true and accurate copy of one of the 21 Purchase Agreements is attached hereto as Exhibit T, while all others are retained by Plaintiff Murray.

122. Plaintiff Murray tendered monies to Defendants Vue-Orlando and Liberty Place by virtue the $202,500.00 taken out of the draw payments to Plaintiff Churchill under the Development Services Agreement. Defendant Moskowitz agreed to fund the balance of four hundred and seven thousand dollars ($407,000.00) for closing on the 21 Units.

123. Defendant Moskowitz has wrongfully withheld the above amounts and has refused to fund the balance of Plaintiff's deposit and along with Defendants Vue-Orlando and Liberty Place they have refused to apply the $202,500.00 taken out of the draw payments to Plaintiff Churchill towards the 21 Units, and have otherwise refused to permit Plaintiff to enforce the terms of the subject Purchase Agreements, including but not limited to conveying or assigning his contractual rights to the 21 Units.

WHEREFORE, Plaintiff Murray requests a judgment providing for specific performance of the terms of the above referenced Purchase, Assignment and related Agreements in order to effectuate the terms of said Agreements as the property in question is unique and plaintiff cannot be made whole absent specific performance.

## COUNT X
### Tortious Interference with Prospective Business Relationships

124. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

125.     Plaintiff Murray has a contractual right to purchase the 21 Units at the VUE and a right to assign the 21 Units to replacement purchasers.

126.     Defendants have intentionally and unjustifiably interfered with those rights by, *inter alia,* preventing Murray, his agents, representatives and employees from gaining access to the property and individual units; prevented third party brokers from showing those units on his behalf; withholding the funds specifically set aside as the deposit on the Note securing the purchase agreements; soliciting sales contracts on those units from third parties as part of a scheme to prevent Murray from exercising his contractual rights and then profit from that conduct.

127.     Plaintiff Murray identified several prospective buyers for the 21 Units and, upon information and belief, had draft contracts with several of those prospective buyers (the "Prospective Assignment Contracts").

128.     The Vue-Orlando Defendants, Orlando Vue LP, PC Home, Swanson Development, Swanson-Orlando, Epstein and Moskowitz are aware of the existence of the Purchase Agreements and Prospective Assignment Contracts with third parties and are intentionally procuring the breach of same.

129.     The interference by the Vue-Orlando Defendants, Orlando Vue LP, PC Home, Epstein and Moskowitz with the Purchase Agreements and Prospective Assignment Contracts is unjustified.

130.     As a direct and proximate result of Vue-Orlando Defendants, Orlando Vue LP, PC Home, Epstein and Moskowitz's interference with the Prospective Assignment Contracts, Plaintiff Murray has suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiff Murray demands judgment against Defendants Vue-Orlando, Liberty Place, Westminster, Orlando Vue LP, PC Home, Epstein and Moskowitz for damages, prejudgment interest, costs, and for such further relief as this Court deems proper.

## COUNT XI
### Tortious Interference with Contractual Relationships

131.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

132.    Plaintiff Churchill had certain contractual rights in the VUE pursuant to the Real Estate Sales and Marketing Services Agreement, the Development Services Agreement, the Escrow Agreement and other agreements executed with the Vue-Orlando Defendants.

133.    Defendants Vue-Orlando, LLP, Westminster, Orlando Vue LP, PC Home, Swanson Development, Swanson-Orlando, Epstein and Moskowitz, with knowledge of the referenced contractual agreements, have intentionally interfered with said Contracts and have caused the Vue-Orlando Defendants to attempt to terminate Plaintiff Churchill from the project. The attempted termination was unjustified. This intentional interference has prevented Churchill from exercising its contractual right to market and sell the condominium units and thereby collect commissions for that service. Defendants intend to deprive Churchill of those commissions.

134.    Plaintiffs also entered into purchase contracts with third parties for the purchase and sale of other condominiums for which a commission of 3.9% is due to Plaintiff Churchill upon closing.

135.    Defendants have intentionally interfered with said purchase contracts by renegotiating the agreements in an effort to avoid their obligation to pay Churchill the commission that is owed under the terms of the Sales and Marketing Agreement. The above

referenced Defendants are attempting to market condominiums and solicit sales of condominium units in an effort to prevent Churchill from obtaining said sales and collecting the sales commissions on those condominium units, including the marketing and sale of commercial space.

136.   The Lending Defendants have directed, approved and ratified these decisions, including the wrongful attempt to terminate the Prior Agreements, related agreements, and referenced tortious conduct.   This right and obligation to direct and approve the financial decisions of the Vue is set forth in the Loan Agreements with the Vue-Orlando Defendants.   The Lending Defendants had direct knowledge of the contractual agreements by virtue of the Operating Agreements, Loan Agreements and documents which specifically reference the subject agreements.

137.   The intentional interference by Defendants Vue-Orlando, Westminster, Orlando Vue LP, PC Home, Swanson Development, Swanson-Orlando, Epstein, Moskowitz and the Lending Defendants with respect to the Real Estate Sales and Marketing Services Agreement, the Development Services Agreement, the Escrow Agreement and other agreements executed among Plaintiff Churchill and the Vue-Orlando Defendants is intentional and unjustified.

138.   As a direct and proximate result of Defendants Westminster, Orlando Vue LP, PC Home, Swanson Development, Swanson-Orlando, Epstein, Moskowitz and the Lending Defendants' intentional interference with the Real Estate Sales and Marketing Services Agreement, the Development Services Agreement, the Escrow Agreement and other agreements executed with between Plaintiff Churchill and the Vue-Orlando Defendants, Plaintiff Churchill has suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiff Churchill demands judgment against Defendants Westminster, Orlando Vue LP, PC Home, Swanson Development, Swanson-Orlando, Epstein, Moskowitz and the Lending Defendants for damages, prejudgment interest, costs, and for such further relief as this Court deems proper.

## COUNT XII
## Breach of Fiduciary Duty

139.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

140.    Defendant Richard W. Norris P.A. and Richard Norris, were retained to prepare and process title and closing documents including handling the escrow work for condominium sales, on behalf of Plaintiff Churchill for units at the VUE.

141.    Defendants Richard W. Norris P.A. and Richard Norris utilized office space at the Alvarez Firm to prepare documents, perform the title, closing and escrow work and maintain closing files and other documents, including those relevant to the 21 Units referenced above. All escrow work related to the Vue closings was supposed to take place through an escrow account maintained by the Alvarez Firm and Richard W. Norris, Esquire provided said services to Churchill.

142.    Plaintiff Churchill and Defendants Bayshore Title, Richard W. Norris P.A. and Richard Norris, Esquire shared a relationship whereby Plaintiff Churchill depended upon and reposed trust in said Defendants, and Defendants undertook a duty to advise, counsel and protect Plaintiff Churchill's interests with respect to the escrowed funds and VUE closings.

143.    Without prior notice or approval by Plaintiff Churchill, Defendants Richard W. Norris P.A. and Richard W. Norris intentionally removed closing files and relevant documents from the Alvarez Firm and upon information and belief have failed to deposit escrowed funds

due to Plaintiff Churchill into the Alvarez Firm's escrow account, diverting said funds into one or more other accounts.

144. Upon information and belief, Defendants Bayshore Title, Richard W. Norris P.A. and Richard W. Norris have worked in concert with the Vue-Orlando Defendants to deprive Plaintiff Churchill of the closing files and escrowed funds. These Defendants have failed and refused to provide Churchill with documentation regarding the escrow account, closings, funds, contracts or disbursements from escrow.

145. The actions of Defendants Bayshore Title, Richard W. Norris P.A. and Richard W. Norris, Esquire constitute a breach of their fiduciary duty to Plaintiff Churchill.

146. As a direct and proximate result of the actions of Defendants Bayshore Title, Richard W. Norris P.A. and Richard W. Norris, Plaintiff Churchill has suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiff Churchill demands judgment against Defendants Bayshore Title, Richard W. Norris P.A. and Richard W. Norris for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT XIII
### Breach of Fiduciary Duty

147. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

148. Defendant Vue-Orlando is managed by Defendant Liberty Place. Defendant Liberty Place is managed by Defendant Westminster, which in turn is managed by Defendant Moskowitz. Collectively, Liberty Place, Westminster and Moskowitz exercise control over management of the VUE and all business and financial records related to the VUE.

32

149. As a 30% owner/member of Defendant Liberty Place, Plaintiff Churchill has reposed trust in Liberty Place and its managers, Westminster and Moskowitz, to act in the best interests of the VUE and Vue-Orlando. Specifically, Plaintiff Churchill relies on Liberty Place, Westminster and Moskowitz to manage the project in a reasonable manner and to protect Plaintiff Churchill's interests with respect to the VUE records and accountings and to provide Plaintiff Churchill with access to business records related to the VUE. Upon information and belief, Liberty Place, Westminster and Moskowitz have mismanaged the project, including its finances and sales to the detriment of the Vue-Orlando, Churchill and Murray.

150. Plaintiffs further agreed to have Defendants Liberty Place, Westminster and Moskowitz withhold certain compensation due to Plaintiff Churchill, and to hold those Deposit Funds in escrow to apply towards Plaintiff Murray's closings on the 21 Units.

151. Defendants Liberty Place, Westminster, and Moskowitz have intentionally withheld relevant documents and accountings from Plaintiff Churchill, and upon information and belief have failed to accurately protect Plaintiffs' interests with respect to the escrowed Deposit Funds and his interest in the project.

152. The actions of Defendants Liberty Place, Westminster and Moskowitz constitute a breach of their fiduciary duty to Plaintiffs.

153. As a direct and proximate result of the actions of Defendants Liberty Place, Westminster and Moskowitz, Plaintiffs have suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiffs demand judgment against Defendants Liberty Place, Westminster and Moskowitz for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT XIV
## Negligent Misappropriation of Funds

154.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

155.    Plaintiffs depended upon and reposed trust in Defendants Liberty Place, Westminster and Moskowitz, and said Defendants undertook a duty to protect Plaintiff's interests with respect to the Deposit Funds withheld for application towards the 21 Units.

156.    Defendants Liberty Place, Westminster and Moskowitz have negligently misdirected escrowed funds and failed to maintain or account for those funds to Plaintiffs.

157.    The negligent acts of Defendants Liberty Place, Westminster and Moskowitz to divert the withheld Deposit Funds and conceal records from Plaintiffs are a breach of the Defendants fiduciary duty to Plaintiffs, and constitute a misuse and misappropriation of Plaintiffs' funds.

158.    As a direct and proximate result of the actions of Defendants Liberty Place, Westminster and Moskowitz, Plaintiffs have suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiffs demand judgment against Defendants Liberty Place, Westminster and Moskowitz for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT XV
## Fraudulent Misappropriation of Funds

159.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

160. Plaintiffs depended upon and reposed trust in Defendants Liberty Place, Westminster and Moskowitz, and said Defendants undertook a duty to protect Plaintiff's interests with respect to the Deposit Funds withheld for application towards the 21 Units.

161. Defendants Liberty Place, Westminster and Moskowitz have intentionally misdirected the Deposit Funds and failed to maintain or account for those funds to Plaintiffs.

162. The intentional acts of Defendants Liberty Place, Westminster and Moskowitz to divert the withheld Deposit Funds and conceal records from Plaintiffs are a breach of the Defendants' fiduciary duty to Plaintiffs and constitute a misuse and misappropriation of Plaintiffs' funds.

163. As a direct and proximate result of the actions of Defendants Liberty Place, Westminster and Moskowitz, Plaintiffs have suffered damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiffs demand judgment against Defendants Liberty Place, Westminster and Moskowitz for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT XVI
### Misrepresentation

164. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

165. The Vue-Orlando Defendants and Moskowitz made numerous false statements with respect to the material terms of the parties' various agreements and relationships, including but not limited to 1) Defendants' dispensation and application of payments, deposits and escrowed funds belonging to Plaintiff Churchill; 2) Defendants' intent to convey the 21 Units to

Plaintiff Murray and/or his assigns and 3) Moskowitz' failure to provide any personal investment of funds as contemplated in the initial financing of the project.

166.    The Vue-Orlando Defendants and Moskowitz knew or should have known that their representations were false and that Plaintiffs Churchill and Murray would reasonably rely on said representations in moving forward with respect to the VUE project, including but not limited to entry into the Prior Agreements and condominium purchase agreements.

167.    Plaintiffs Churchill and Murray reasonably relied and acted to their detriment based upon the statements of the Vue-Orlando Defendants and Moskowitz, by *e.g.* executing the Escrow Agreement and assignment contracts with third parties for the 21 Units, and trusting third parties, including Richard Norris P.A. and Richard Norris, Esquire to maintain escrowed funds with respect to the VUE closings.

168.    As a direct and proximate result of the actions of the Vue-Orlando Defendants and Moskowitz, Plaintiffs have suffered damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiff Churchill demands judgment against the Vue-Orlando Defendants and Moskowitz for damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

<u>COUNT XVII</u>
<u>Conversion</u>

169.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-48 above, as if fully restated herein.

170.    This is an action for conversion and damages in excess of $75,000 against the Vue-Orlando Defendants and Moskowitz.

171.    Since 2007, the Vue-Orlando Defendants and Moskowitz have converted to their own use, escrowed commissions, the Deposit Funds, development fees, and other fees that are the property of Plaintiff Churchill, of a value in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest and attorney fees, the specific amount to be determined upon an accounting by the Vue-Orlando Defendants.

172.    Plaintiff Churchill has demanded an accounting and immediate relinquishment of the converted property.  Plaintiff Churchill's demand has not been met.

WHEREFORE Plaintiffs Churchill and Murray demand judgment against the Vue-Orlando Defendants and Defendant Moskowitz for conversion and damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

## COUNT XVIII
## Civil Conspiracy

173.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-43 above, as if fully restated herein.

174.    The Vue-Orlando Defendants, PC Home Investors, Orlando Vue LP, the Lender Defendants, Richard W. Norris P.A., Richard Norris, Shayle Epstein, and Erik Moskowitz are parties to a civil conspiracy.

175.    The Vue-Orlando Defendants, PC Home Investors, the Lending Defendants, Orlando Vue LP, Richard W. Norris P.A., Richard Norris, Shayle Epstein, and Erik Moskowitz conspired to unlawfully 1) deprive Plaintiff Churchill of development and closing proceeds for the VUE and documents related to same; 2) deprive Plaintiff Murray of his rights to the 21 Units; and 3) terminate Plaintiff Churchill's contracts with respect to the VUE.

176. The Vue-Orlando Defendants, Richard W. Norris P.A., Richard Norris, and Erik Moskowitz owed various duties to Plaintiffs, including the duty to protect Plaintiffs from interference with Plaintiffs' rights with respect to the VUE.

177. The Vue-Orlando Defendants, PC Home Investors, Lender Defendants, Orlando Vue LP, Richard W. Norris P.A., Richard Norris, Shayle Epstein and Erik Moskowitz have collectively worked to commit numerous acts in furtherance of their conspiracy, namely depriving Plaintiffs of access to the sales proceeds, access to the property, access to the condominium units at the VUE, sales and financial records, and unlawfully interfering with Plaintiffs' contractual rights and relationships with respect to the VUE.

178. As a direct and proximate result of the conspiracy among the Vue Defendants, PC Home, Orlando Vue LP, Richard W. Norris P.A., Richard Norris, Shayle Epstein and Erik Moskowitz, the Plaintiffs have suffered direct and proximate damages in a principal amount in excess of $75,000, exclusive of interest, costs, and attorney's fees.

WHEREFORE Plaintiffs Churchill and Murray demand judgment against the Vue-Orlando Defendants, PC Home Investors, Orlando Vue LP, Defendants Richard W. Norris P.A., Richard Norris, Epstein and Moskowitz for civil conspiracy and damages, prejudgment interest, costs, attorneys' fees and for such further relief as this Court deems proper.

Plaintiffs hereby demand trial by jury of all issues so triable as of right.

By:    s/David C. Schwartz, Esquire
Florida Bar No.: 0501727
Fowler White Boggs Banker P.A.
200 South Orange Avenue, Suite 1950
Orlando, FL 32801
Telephone: (407) 406-5500
Facsimile: (407) 406-5555
E-Mail: david.schwartz@fowlerwhite.com
Attorneys for Plaintiffs
